590 A.2d 798

**In the Interest of Tanya PALMER (Born 5/24/81), Edward C. Wissinger (Born 3/13/89).**

**Appeal of Annette Jane LANDIS, Natural Mother.**

Superior Court of Pennsylvania.

Argued March 21, 1991.

Filed May 13, 1991.

Dale A. Lundberg, Lower Burrell, for appellant.

Dorean N. Petonic, Greensburg, for appellee.

James L. Liberto, New Kensington, for Westmoreland County Children's Bureau, participating party.

Before ROWLEY, President Judge, and WIEAND and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant, Annette Jane Landis, takes this appeal from a June 4, 1990 order adjudicating her one-year old child, Edward C. Wissinger (hereinafter "Eddie"), dependent. The order was entered after Eddie's eight-year old half-sister, Tanya Palmer, died under suspicious circumstances. Appellant argues that the Westmoreland County Children's Bureau did not prove by clear and convincing evidence that Eddie was a dependent child. For the following reasons, we reverse.

The deceased minor child, Tanya, was the daughter of Annette Jane Landis and Arnold Palmer. The minor child, Eddie, is the son of Annette Jane Landis and Edward Wissinger. Ms. Landis and Mr. Wissinger had lived together for three years before the death of Tanya Palmer.

The facts surrounding the death of Tanya Palmer were aptly summarized by the court below as follows:

On April 19, 1990, the natural mother was working her full-time job at a diner, and left the minor children in the care of Edward Wissinger who [was] unemployed. Although Mr. Wissinger refused to testify at the [dependency and custody] proceedings, invoking his Fifth Amendment Rights, the history provided by Mr. Wissinger to

others is that the minor child, Tanya Palmer, went to take a bath. Twenty minutes later Mr. Wissinger went to check on her, and found her drowned in the bath tub. A question arose as to whether Mr. Wissinger immediately called for help upon discovering Tanya. There was considerable testimony over the period of time that was taken for the ambulance to arrive and take the child to the hospital, which indicates that the ambulance personnel acted promptly upon the call. There was also testimony from the emergency room physician who was concerned that the child was pulseless and that rigor mortis had set in, which is indicative of the fact that the child had [been dead] considerably longer than Mr. Wissinger's history indicated.

Dr. Cyril H. Wecht, a forensic pathologist, found that the cause of death was drowning. Dr. Wecht determined that ... bruises on the [child's] forehead and on the top of [her] feet ... [that] were quite recent ... were caused by a traumatic event that was not accidental. All of this[,] Dr. Wecht testified, was consistent with the child being forcibly held up by her feet and dangled into the tub with her head under water, causing her to drown. Dr. Wecht determined the bruises were sustained less than an hour prior to death and probably within minutes of death.

Trial Court Opinion at 2–3. Based on the above facts, the Westmoreland County Children's Bureau ("the Bureau") was notified on April 19, 1990, that Tanya Palmer had been brought to Latrobe Hospital and pronounced dead on arrival. By order of the Honorable Charles E. Marker of the Westmoreland County Court of Common Pleas, the Bureau assumed custody of Eddie Wissinger on that same day. The promptness of Judge Marker's decision was apparently based on the suspicious nature of Tanya's death. Thereafter, Edward Wissinger was arrested for the homicide of Tanya Palmer and, as of the date of the dependency hear-

ings, was incarcerated while awaiting trial on that charge.[1]

On April 27, 1990, the Bureau petitioned to have Tanya and Eddie adjudicated dependent. Hearings were held before the Honorable Charles E. Marker on May 8, May 18, and May 29, 1990. On June 4, 1990, an order was entered declaring that Tanya was a dependent child and that Eddie is a dependent child. This order awarded custody of Eddie to his maternal grandmother. Subsequently, on June 19, 1990, appellant filed a petition to regain custody of Eddie. On June 29, 1990, a hearing was held on appellant's petition. On July 2, 1990, an order was entered returning custody of Eddie to appellant subject to certain conditions.[2] That same day, appellant took this timely appeal from the June 4, 1990 order declaring Eddie dependent.

The apparent basis for the trial court's conclusion that Eddie was dependent was its finding that appellant had "elected not to protect Tanya from Mr. Wissinger," and "attempted to introduce evidence denying any abuse of Tanya by Mr. Wissinger." Trial Court Opinion at 6. Appellant argues that (1) the evidence was insufficient to show that Eddie was abused or neglected during the time he was in the custody of his mother, and (2) the fact that Eddie's half-sister may have suffered abuse did not provide an adequate basis for a determination that Eddie was a dependent child. Appellant therefore argues that the Bureau failed to prove by clear and convincing evidence that Eddie was dependent.

1. Mr. Wissinger was incarcerated without bail because he had fled the State of Maryland after having been convicted of driving while intoxicated. Mr. Wissinger was sentenced to two-and-one-half years imprisonment on that charge. *See* N.T. June 29, 1990, at 7–8, 11–14, 19, 24–25.

2. The Order returned custody of Edward Wissinger to appellant subject to the following conditions: (1) appellant must follow the treatment program outlined by the psychologist; (2) appellant must ensure that there be no contact between Edward Wissinger and the dependent child; and (3) the Bureau must continue to provide general protective services until the Indiana County Child Welfare Agency can provide them.

■ In order to find a child "dependent" under the Juvenile Act,[3] it must be shown that the child is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals." 42 Pa.C.S.A. § 6302. "[I]n determining whether a child is dependent, the hearing judge should not ask what are the child's 'best interests' but whether the child is presently without proper parental care and, if so, whether such care is immediately available." *In the Interest of Pernishek*, 268 Pa.Super. 447, 458, 408 A.2d 872, 877–78 (1979) (citing *In the Interest of LaRue*, 244 Pa.Super. 218, 366 A.2d 1271 (1976)). The purpose of the Juvenile Act is to preserve the unity of the family whenever possible. *See In the Matter of Jackson*, 302 Pa.Super. 369, 373, 448 A.2d 1087, 1088 (1982) (citing *In re Donna W.*, 284 Pa.Super. 338, 343, 425 A.2d 1132, 1134 (1981); *In the Interest of Pernishek*, 268 Pa.Super. at 457, 408 A.2d at 877; *In re Jackson*, 267 Pa.Super. 428, 431, 406 A.2d 1116, 1118 (1979); *In re Whittle*, 263 Pa.Super. 312, 316, 397 A.2d 1225, 1226 (1979); *In the Interest of LaRue*, 244 Pa.Super. at 223, 366 A.2d at 1284). As stated by this Court, "it is 'a very serious matter indeed to allege that a child is a dependent child and thereby invite the intervention of agencies of the state into a parent's care of that child.'" *In re T.D.*, 381 Pa.Super. 300, 304, 553 A.2d 979, 981 (1988) (quoting *In Interest of Theresa E.*, 287 Pa.Super. 162, 171, 429 A.2d 1150, 1155 (1981)). Thus, a court may find a child dependent only upon proof by clear and convincing evidence. 42 Pa.C.S.A. § 6341(c); *see also In the Matter of Jackson, supra* 302 Pa.Super. at 373, 448 A.2d at 1088. Clear and convincing evidence is "testimony [that] is so clear, direct, weighty, and convincing as to enable the [fact-finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re Jackson*, 267 Pa.Super. at 431, 406 A.2d at 1118 (quoting *LaRocca Trust*, 411 Pa. 633, 640, 192 A.2d 409, 413 (1963)).

3. 42 Pa.C.S.A. § 6301 *et seq.*

██ The court's dependency order of June 4, 1990 was entered after hearing testimony on May 8, May 18, and May 29, 1990. The bulk of the evidence presented at these hearings concerned the events surrounding Tanya Palmer's death and Mr. Wissinger's treatment of Tanya prior to the date of her death. There was no testimony concerning appellant's parenting ability. *See In the Matter of Jackson, supra* 302 Pa.Super. at 375, 448 A.2d at 1090 (citations omitted). Indeed, of the eleven witnesses called to testify in support of the Bureau's petition, only three, family friends William and Sherry Jury and appellant herself, could have provided evidence regarding appellant's parenting ability, and they did not do so. In addition, there was no evidence that Eddie had been abused or neglected. Finally, while it was undisputed at those hearings that Mr. Wissinger was incarcerated, there was no testimony regarding whether appellant would allow him access to Eddie if he were to be released. Despite this lack of evidence that appellant was an unfit parent or that Mr. Wissinger presented a threat to Eddie, the trial court adjudicated Eddie dependent and awarded custody to his maternal grandmother. *See* Order of Court, June 4, 1990.

On June 29, 1990, a hearing was held on appellant's petition to regain custody of Eddie. At this hearing evidence was presented that indicated that Mr. Wissinger was incarcerated and, therefore, represented no immediate threat to Eddie.[4] In addition, appellant testified that, even if Mr. Wissinger were to be released, she would not allow him to have any contact with Eddie. *See* N.T. June 29, 1990 at 13, 15, 22. Specifically, appellant testified on direct examination as follows:

Q. Are you agreeable to have a psychological evaluation and have any treatment necessary?

**4.** As we have already noted, Mr. Wissinger was sentenced to two-and-one-half years incarceration after leaving the State of Maryland following a conviction for driving while under the influence. *See* N.T. June 29, 1990 at 7–8, 11–14, 24–25. However, it is unclear how much time Mr. Wissinger has left to serve on that charge. Moreover, there is no indication in the record of the disposition of the homicide charge against Mr. Wissinger.

A. Yes.

Q. Are you agreeable to making sure all your baby
sitters are cleared through Child Line?

A. Yes.

Q. If by chance Ed Wissinger would get released from
jail, would you let him have any contact with Ed,
Junior?

A. No.

*Id.* at 13. Furthermore, appellant testified on cross-exami-
nation as follows:

Q. You indicated that if Edward Wissinger, the father,
were released from incarceration, you would see to it
he [would] have no contact with your child.

A. Yes.

Q. Do you believe he should have contact with your
child at this time?

A. No.

Q. What would you do in the event he came to the home
to have contact with his son?

A. I wouldn't answer the door.

Q. What else would you do?

A. I would call the Children's Bureau and ask them
what it is he has to do, and make sure he understands
what he has to do so that I don't lose Eddie again.

*Id.* at 15. Appellant also testified at this hearing that she
would do whatever was required of her to regain custody of
Eddie. *Id.* at 13–23. Moreover, testimony at the custody
hearing revealed that appellant kept a clean home, *id.* at 7,
had steady employment, *id.* at 5–6, and had arranged for
baby-sitters to care for Eddie when she was working. *Id.*
at 9. Finally, we note that both the Bureau and the
guardian ad litem were present at the June 29 hearing and
recommended that the child be returned to his mother's
custody following a psychological evaluation. *Id.* at 10, 27.
For example, on direct examination a caseworker for the
Bureau testified as follows:

Q. Does the agency have any concerns for the mother's ability to take care of the minor child, Edward, at this time?

A. We have no concerns Ms. Landis can take care of Edward.

* * *

Q. What is the Westmoreland County Children's Bureau recommending regarding placement of this child?

A. Since Ms. Landis now has a residence of her own again, since she has agreed to seek an evaluation to see if therapy is needed and to have appropriate caretakers for her child, and has agreed to have general protective services, we recommend that Edward be returned to her custody.

*Id.* at 8, 10. After hearing the above testimony and after receiving psychological evaluations on appellant, the trial court restored custody of Eddie to appellant. *See* Order of Court, July 2, 1990.

Our review of the evidence presented at the dependency hearings that preceded the June 4, 1990 order reveals that the Bureau failed to prove by clear and convincing evidence that Eddie was dependent. As we have noted, a child cannot be adjudicated dependent unless there is clear and convincing evidence that proper parental care is not immediately available. *See In re A.E.M.,* 288 Pa.Super. 284, 288–89, 431 A.2d 1049, 1052 (1981); *see also In the Interest of Pernishek, supra* 268 Pa.Super. at 458, 408 A.2d at 877–78. Here, there was no serious question that appellant possessed sufficient parenting skills to care for Eddie. Indeed, the Bureau produced no evidence that would call into question appellant's parenting capabilities. Instead, the determination below was premised solely on the court's finding that appellant was unable to protect Eddie from Mr. Wissinger. This finding is not supported by the evidence. *No* evidence was presented at the dependency hearings to suggest that Edward Wissinger presented a threat to Eddie, or that appellant was unwilling, or unable, to protect Eddie from such a threat. The fact of Tanya's death alone does

not justify the court's finding that appellant "elected" not to protect Tanya or its apparent derivative inference that she therefore would not be able to provide proper parental care for Eddie. There simply was no record evidence to suggest that appellant knew, or should have known, of the danger to Tanya. Instead, appellant testified that, to her knowledge, Mr. Wissinger had never physically punished Tanya in the past. *See* N.T. May 29, 1990 at 18. This statement was not contradicted by physical or testimonial evidence.

We should note that, even if the evidence produced at the dependency hearings was sufficient to raise a question about appellant's ability to provide proper parental care in light of the threat posed by Mr. Wissinger, the evidence introduced at the subsequent hearing on appellant's custody petition should have removed this doubt. At that hearing, the Bureau conceded that appellant was a fit custodian, that Mr. Wissinger posed no threat to Eddie because he was incarcerated, and that appellant would not grant Mr. Wissinger access to the child if he were released, and, in fact, recommended that the child be returned to appellant's custody. In addition, appellant testified that she would do whatever was necessary to regain custody of her child, including prohibiting any contact between Mr. Wissinger and Eddie. We should note that the trial court credited appellant's testimony in this regard.

We recognize, of course, the gravity of the situation in this family, and the trial court's proper concern for Eddie's safety in light of the circumstances surrounding Tanya's death. However, the fact of Tanya's death alone cannot justify a finding that Eddie is dependent when there was no prior indication that either Tanya or Eddie were physically abused, thus putting appellant on notice of a danger to her children, and when it was uncontested that the source of the threat to Eddie was incarcerated. A court may find a child dependent only upon "testimony [that] is so clear, direct, weighty, and convincing as to enable the [fact-finder] to come to a clear conviction, without hesitancy, of the truth

of the precise facts in issue." *In re Jackson, supra* 267 Pa.Super. at 431, 406 A.2d at 1118 (quoting *LaRocca Trust,* 411 Pa. 633, 640, 192 A.2d 409, 413 (1963)); *see also* 42 Pa.C.S.A. § 6341(c); *In the Matter of Jackson, supra* 302 Pa.Super. at 373, 448 A.2d at 1088. Here, "the precise facts in issue," i.e., the danger posed by Mr. Wissinger and appellant's inability to properly protect Eddie from that danger, were not proved by clear and convincing evidence. Accordingly, because the evidence does not support the trial court's finding of dependency, we reverse.

Order reversed. Jurisdiction relinquished.

ROWLEY, President Judge, notes his dissent.