J-S68045-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: I.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: BEAVER COUNTY | : | |
| CHILDREN AND YOUTH SERVICES | : | No. 1417 WDA 2019 |

Appeal from the Order Entered August 16, 2019
In the Court of Common Pleas of Beaver County
Juvenile Division at No(s): CP-04-DP-0000011-2013

BEFORE: GANTMAN, P.J.E., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY GANTMAN, P.J.E.:      **FILED JANUARY 17, 2020**

Appellant, Beaver County Children and Youth Services ("Agency"), appeals from the order entered in the Beaver County Court of Common Pleas, which denied the Agency's petition to adjudicate the minor child, I.M. ("Child"), dependent. We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case. Therefore, we have no need to restate them.

The Agency raises one issue for our review:

> WHETHER THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY NOT ADJUDICATING…CHILD DEPENDENT WHEN THE EVIDENCE PRESENTED BY BEAVER COUNTY CHILDREN AND YOUTH SERVICES ESTABLISHED BY CLEAR AND CONVINCING EVIDENCE THAT…CHILD WAS DEPENDENT UNDER 42 PA.C.S.[A.] § 6302(1)[?]

_____

[*] Retired Senior Judge assigned to the Superior Court.

(Agency's Brief at 3).

The applicable scope and standard of review for dependency cases is as follows:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re A.B.*, 63 A.3d 345, 349 (Pa.Super. 2013) (quoting *In re R.J.T.*, 608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010)).

> We accord great weight to this function of the hearing judge because [the court] is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before [the court]. Relying upon [the court's] unique posture, we will not overrule [its] findings if they are supported by competent evidence.

*In re A.H.*, 763 A.2d 873, 875 (Pa.Super. 2000) (quoting *In re B.B.,* 745 A.2d 620, 622 (Pa.Super. 1999)). *See also In re L.Z.*, 631 Pa. 343, 360, 111 A.3d 1164, 1174 (2015) (reiterating standard of review in dependency cases requires appellate court to accept trial court's findings of fact and credibility determinations if record supports them, but appellate court is not required to accept trial court's inferences or conclusions of law); *In re D.P.*, 972 A.2d 1221, 1225 (Pa.Super. 2009), *appeal denied*, 601 Pa. 702, 973 A.2d 1007 (2009) (stating applicable standard of review in dependency cases is "abuse of discretion").

The Juvenile Act defines a dependent child, in pertinent part, as follows:

**§ 6302. Definitions**

**"Dependent child."** A child who:

(1)   is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals.  A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S.A. § 6302.  A court may adjudicate a child as dependent if the child meets the statutory definition by clear and convincing evidence.  **In re E.B.**, 898 A.2d 1108, 1112 (Pa.Super. 2006).  "The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available."  **In re G., T.**, 845 A.2d 870, 872 (Pa.Super. 2004) (internal citation omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Mitchell P. Shahen, we conclude the Agency's issue merits no relief.  The trial court opinion comprehensively discusses and properly disposes of the question presented.  (**See** Trial Court Opinion, filed October 11, 2019, at 13-22) (finding: most of testimony of Ms. Green, Agency caseworker, was based upon her observation of forensic interviews of Child and Child's twin, I.J.M.; forensic

- 3 -

interviewer, however, did not testify, and Agency presented no evidence of Child's behavior during forensic interview; thus, court could not assess reliability of Child's forensic interview statements which Ms. Green recounted at hearing, and court afforded little to no weight to Ms. Green's forensic interview summary; further, Ms. Green did not know whether Child's permanent legal custodians, maternal grandparents, were aware Child's half-brother and purported abuser, T.H., was in home at time of alleged incident; Ms. Green also did not know if maternal grandparents kept T.H. away from Child following incident where T.H. purportedly sexually abused Child years ago; in I.J.M.'s *in camera* interview, he denied alleged incident occurred and said T.H. had not been around Child in approximately two years; court found I.J.M. credible; during Child's *in camera* interview, she initially denied recent incident with T.H. occurred; when Child later recanted, Child described incident only generally and did not provide details Ms. Green referenced in her summary of Child's forensic interview; court found Child incredible; moreover, even if court accepted Child's allegation of abuse as true, Agency presented no evidence maternal grandparents failed to take proper actions since Child's allegation to rectify situation and protect Child; record fails to establish proper parental care or control was not immediately available). The record supports the trial court's rationale. ***See In re. A.B., supra***. Accordingly, we affirm on the basis of the trial court's opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/17/2020

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY,
PENNSYLVANIA
JUVENILE COURT DIVISION

IN THE INTEREST OF                    :
I. M. , A MINOR                       :          No. 10 of 2013
                                      :          FID: 8 of 2019

## OPINION

Shahen, Mitchell P.                              OCTOBER 11, 2019

## PROCEDURAL HISTORY

On August 12, 2019, this court held an Adjudication hearing in the above referenced case. Beaver County Children and Youth Services ("BCCYS") filed a petition for the adjudication of the minor child, I.M., age 9, under **42 Pa. C.S.A. § 6302(1)** alleging that the child was without proper care and control. Simultaneously to the Adjudication hearing involving I.M., an Adjudication hearing was conducted concerning I.M.'s twin brother I.J.M. At the time of the instant Petition, both children resided with Maternal Grandparents, A.R. and R.R.

The children resided with Maternal Grandparents as the result of a prior Dependency action which was terminated in 2015, whereby the Maternal Grandparents were named as "permanent legal custodians" of both I.M and I.J.M.

In the instant matter, BCCYS requested the removal of the child who is the subject of this appeal, I.M., from the home of the permanent legal custodians, Maternal

Grandparents, but did not seek the removal of I.J.M. from the home of Maternal Grandparents.

BCCYS provided notice to the Biological Mother, K.R; permanent legal custodians, Maternal Grandparents, A.R. and R.R.; and Biological Father, L.M. The Court notes that Biological Father's notice was sent to the last known address for Father that was available to BCCYS at the time of filing the Petition for Dependency. The Court further notes that Father has not been involved with the children or another child of Father in a separate Dependency case.

The following parties appeared at the Hearing: Biological Mother, K.R.; Attorney Sherri Hurst, Counsel for Biological Mother; Maternal Grandmother, A.R.; Attorney Nicole Tesla, Counsel for Maternal Grandmother and Maternal Grandfather; Attorney Dana Kwidis, Counsel for BCCYS; Attorney Tiffany York, Guardian Ad Litem ("GAL"); I.M., minor child; and I.J.M., sibling of minor child.

Maternal Grandfather did not attend the hearing. However, Maternal Grandfather was represented by counsel at the hearing. Biological Father did not attend the hearing.

After a full hearing on the merits, this Court found that there was not clear and convincing evidence to adjudicate the minor as a dependent child and entered a decree to that effect on August 16, 2019. A summary of the Findings in support of the written Decision of August 16, 2109 were included in that written Decision. At the Hearing, BCCYS offered the testimony of BCCYS intake caseworker, Donita Green and the two children, I.M. and I.J.M. The testimony of the children was conducted by way of an in

camera interview in the presence of the Court and the GAL for the children. The parties and counsel consented to the interview and that the interview would be conducted in the presence of the GAL and the Court only. The child who is the subject of this appeal was interviewed along with her twin brother, I.J.M.

The gist of the allegation against the permanent legal custodians, the Maternal Grandparents, was that sometime in June of 2019, the Maternal Grandparents permitted T.H., an older half-sibling of I.M., to be in the residence with I.M. and her twin brother, I.J.M. and that while he was there, sometime between 12:00 a.m. and 3:00 a.m., he requested that I.M. have improper sexual contact with him. When she refused, he masturbated in the presence of I.M. This was reported to have happened while T.H., I.M., and I.J.M., were together in the same room at Maternal Grandparents' house. Prior to the alleged incident which led to the filing of the instant Dependency Petition in this case, T.H. was previously indicated for abuse due to a prior incident that involved I.M. in 2016.

In response to the order denying adjudication, BCCYS, by and through its counsel, filed a Notice of Appeal in addition to Errors Complained of on Appeal on September 12, 2019 for the instant case only. An appeal was not filed in the companion case regarding I.J.M. This appeal now follows.

## STATEMENT OF ERRORS COMPLAINED OF ON APPEAL

BCCYS's Statement of Matters Complained of on Appeal is set forth in its entirety as follows:

1. The Honorable Court erred by not adjudicating the child dependent when the evidence presented by Beaver County Children and Youth Services established by clear and convincing evidence that the child was dependent under 42 Pa. C.S. 6302 (1).

2. The Honorable Court abused its discretion in failing to adjudicate the child dependent despite statements made by the child regarding the alleged abuse which were not objected to as hearsay at the time of the hearing.

## FINDINGS AND CONCLUSIONS

Based upon the testimony and evidence in this case, the following Findings and Conclusions were reached by the Court and included in the August 16, 2019 Order of Adjudication:

> An Adjudication Hearing was held on August 12, 2019. The Caseworker, Donita Green, testified on behalf of the Agency. The Court also heard testimony from [I.M.] and [I.J.M.]. From this testimony, the following findings are made. [I.M.] is 9 years old.
> [I.J.M.] is the twin brother of [I.M.]. Currently, [I.M.] is placed in a foster home and [I.J.M.] was not removed from the home. He still resides with [Maternal Grandparents, A.R. and R.R.].
>
> Prior to the time that these proceedings were filed, [I.M.] and [I.J.M.] resided with the maternal grandparents.
> [Maternal Grandfather, R.R.] works                and is away from home most of the day. [Maternal Grandmother, A.R.] is the party who provides most of the support and supervision for the children. The testimony, some of which consisted of the hearsay statements of a forensic interview and the hearsay conclusions of the forensic interview of [I.M.], along with statements that were made by the child to the caseworker and others, insinuated that an adult brother of [I.M.] attempted to solicit inappropriate contact from [I.M.] and that he engaged in inappropriate sexual behavior in the presence of [I.M.]. This conduct is alleged to have occurred while [I.M.] and [I.J.M.] were in a bedroom of the [Maternal Grandparents, their guardians] sometime around 12:00 a.m. and 3:00 a.m. in the days preceding [I.M.'s] admission to an inpatient facility.

Both children were interviewed and both children were found competent to provide testimony. Clear and convincing evidence of the alleged statement and actions of the adult brother is not found to exist.

**Order of Adjudication and Disposition dated August 16, 2019.**

The following additional Findings and credibility determinations are found to arise out of the evidence and the procedural history of this case.

1. I.M. resides in the Commonwealth of Pennsylvania. She has a twin brother, I.J.M., with whom she resided at the home of A.R. and R.R., the Maternal Grandparents of the Children.

2. The Agency originally filed Dependency petitions for both of the twins, I.M. and I.J.M. By Orders dated August 16, 2019, the Court found that clear and convincing evidence did not exist to substantiate the allegations set forth in either Dependency petition. No appeal was taken by the Agency from the decision on the case involving I.J.M., the twin brother of I.M.

3. I.M. and I.J.M. have an adult older half-brother, T.H. who did not reside with them.

4. The Agency referral for this case was received on July 1, 2019. The referral allegation was that the older brother, T.H., requested that I.M. engage in inappropriate conduct with T.H. and then when I.M. refused, T.H. masturbated in the presence of I.M. This was alleged to have occurred in the home of the Maternal Grandparents between 12:00 a.m. and 3:00 a.m. I.M., I.J.M. and the older brother, T.H., were alleged to be together when the incident occurred.

5. The older brother, T.H., was previously indicated for sexual assault on I.M. when I.M. was six (6) years old. T.H. "went through delinquency proceedings for that ..." conduct.[1]

6. I.M. and her siblings have a history of being involved in the Beaver county Dependency system.

7. In March of 2013, I.M. along with other siblings, were removed from their mother, K.R., due to neglect and her inability to maintain adequate housing. During the time, the Agency was involved providing services and support to A.R.

8. In May of 2014, I.M was placed in the care of her maternal grandparents, A.R. and R.R., due to K.R.'s lack of cooperation and progress with BCCYS's recommendations.

9. In January of 2015, the legal guardianship of I.M. was given to maternal grandparents, dependency was terminated, and protective supervision was closed.

10. In 2016, the half-brother of I.M., T.H., was indicated for sexually abusing I.M., initiated through a report from I.M. to BCCYS that continuous instances of sexual abuse or attempted sexual abuse were occurring. A Dependency action was not initiated as a result of this allegation. However, according to the testimony of BCCYS Intake caseworker, Donita Green, T.H. was subject to delinquency proceedings stemming from that incident.[2]

---

[1] Adjudication Hearing Transcript, 8/12/19, p. 20. (Hereinafter "A.H.T.")
[2] Id. at 19.

11. On July 1, 2019, BCCYS received a referral regarding I.M.[3] The referral was received during the time when I.M. was staying at Mars Home for Youth ("MHY").[4] I.M. went to MHY on June 19, 2019.[5] The alleged abuse occurred a week to a couple days before I.M. went to MHY.[6] During the investigation of the alleged abuse, which later prompted the instant proceedings, BCCYS intake caseworker, Ms. Green, was made aware of a prior sexual misconduct allegation between I.M. and T.H. which occurred back in 2016.[7]

12. I.M. was moved from MHY and involuntarily committed to Butler Community Hospital. She was later transferred to Sharon Regional Hospital on July, 17, 2019.[8] Thereafter, I.M. was discharged from Sharon Regional Hospital on July 23, 2019 to the care of Maternal Grandmother, A.R.[9]

13. A verbal request for Emergency Protective Custody was received by the Court on July 29, 2019 concerning I.M.

14. The Court verbally Ordered the Emergency Protective Custody of the minor and Confirmed the Verbal Order in writing on August 2, 2019. The basis for the Emergency Protective Custody request by BCCYS was the receipt of a report to BCCYS that while the minor was in the custody of her current legal custodians, A.R. and R.R., the minor's half-brother, T.H., was also at times located on the premises,

---

[3] Id. at 15.
[4] Id. at 15-20.
[5] Id. at 19-20.
[6] Id. at 19-20.
[7] Id. at 18-19.
[8] Id. at 20.
[9] Id. at 36.

during which time it was alleged that T.H. masturbated in the minors presence and asked her to perform an oral sex act on him.[10] BCCYS advised they became aware of the alleged conduct from the minor.[11] BCCYS also reported that the current legal guardians of the minor, A.R. and R.R., refused to believe the allegations and that this created a safety risk to the minor, as the guardians refused to take a protective stance to ensure the minor would not have contact with T.H.[12]

15. On July 31 2019, BCCYS filed a Dependency Petition pursuant to **42 Pa. C.S. 6302 (1)**, which states in pertinent part:

> The child:
>
> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his/her physical, mental, or emotional health, or morals; a determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk.

**42 Pa. C.S. 6302 (1).**

16. BCCYS's petition alleged that there was a safety risk regarding the minor for lack of supervision and the refusal to take a protective stance by the current legal custodians A.R. and R.R. and the biological Mother, K.R.[13] BCCYS's Petition averred that the

---

[10] Confirmation of Verbal Order for Emergency Protective Custody Order, 8/2/19 (hereinafter, "EPC Order").
[11] Id.
[12] Id.
[13] BCCYS Dependency Petition, 7/31/19 (hereinafter, "D.P.")

minor made an allegation regarding an adult sibling that is indicative of a serious lack of supervision on behalf of the caregivers.[14]

17. During the course of the Dependency hearing the intake caseworker, Ms. Green, testified with regards to maternal grandparents and biological Mother's ability to supervise I.M.

18. There was a forensic interview of I.M. conducted on July 15, 2019, and Ms. Green was present during the interview.[15] During the forensic interview I.M. alleged that an incident occurred a couple days before she went to MHY (June 19, 2019), the incident was stated to have occurred in the living room of the Maternal Grandparents' home between 12:00 a.m. and 3:00 a.m. I.M. stated to the forensic interviewer that T.H., the older brother, asked her to perform oral sex acts and masturbated and that I.J.M. and I.M. were both present when this happened.[16]

19. The notes of the forensic interview of I.M. were not admitted into evidence, nor was there any testimony from the forensic interviewer.

20. There was not testimony by Ms. Green of the opinions of the forensic interviewer regarding any indicators of truthfulness or deceit that were noted by the forensic interviewer. Ms. Green was not aware of whether I.M. was asked if she was around her older brother, T.H., at any other time.[17]

---

[14] Id.
[15] Id. at 21.
[16] Id.
[17] Id. at 22.

21. A forensic interview was conducted with I.J.M. on August 6, 2019.[18] I.J.M. did not make any disclosures of any alleged incidents during the interview.[19] However, Ms. Green indicated that I.J.M. was not asked about the incident I.M. disclosed.[20]

22. The notes of the forensic interview of I.J.M. were not admitted into evidence and the forensic interviewer did not testify.

23. With regards to the most recently alleged incident, Ms. Green testified that A.R. was home when it allegedly occurred but that she and R.R. were asleep, as the incident occurred between Midnight and 3:00 a.m. at their home.[21]

24. It is unknown whether A.R. and/or R.R. were even aware that T.H. was at the residence at that time.[22]

25. A.R. advised Ms. Green that inappropriate and nude photographs were found on I.M.'s phone and that A.R. believed the current allegations stemmed from I.M. being upset that A.R. sent her to MHY.[23]

26. After I.M.'s release from the hospital, I.M. was returned to the care of A.R. and R.R.[24] I.M. remained in their care from July 23rd through 29th and no further allegations of abuse were reported.[25]

---

[18] Id. at 22.
[19] Id.
[20] Id.
[21] Id. at 32-33.
[22] Id. at 33.
[23] Id. at 35.

27. BCCYS has no knowledge of T.H. ever being permitted to be around I.M. after the time Ms. Green advised Mother that T.H. was not permitted to be around I.M.[26]

28. BCCYS acknowledged that the only alleged contact between I.M. and T.H. occurred prior to Mother being notified that T.H. was not permitted around I.M.[27]

29. Ms. Green was asked whether she was aware that any no contact provision regarding the 2016 allegations was connected to the Court Order from the Delinquency Court and that any no contact provision would have ended upon T.H.'s release relating to those allegations, to which she stated she was not aware.[28]

30. At first Mother believed that I.M. was not telling the truth, but now she does believe her.[29]

31. The Court also spoke with both I.M. and her fraternal twin brother, I.J.M, in chambers in the presence of the GAL. Counsel for the parties waived their presence during the in camera interview that was conducted for both children.

32. Prior to the separate in camera interviews with each child, the court conducted an age appropriate competency evaluation of each child and determined that each child was competent to testify.

33. During the interview of I.J.M., the minor repeatedly denied that T.H. has been at the maternal grandparents' house at any time in the past two years.[30]

---

[24] Id. at 37.
[25] Id.
[26] Id. at 38.
[27] Id. at 38-39.
[28] Id. at 37.
[29] Id. at 40.

34. I.J.M. stated that T.H. is not permitted at the house.[31]

35. He also denied that T.H. came to the house and asked I.M. or I.J.M. to do "bad things."[32]

36. I.J.M. stated that the only time T.H. was at the house recently he remained outside.[33]

37. He also stated that Grandma and Grandpa, A.R and R.R., respectively, take care of him and make sure he is safe.[34]

38. The Court then interviewed I.M.

39. She indicated that T.H. does not come to the house.[35]

40. She indicated that T.H. works with Grandfather, R.R., and that he picks T.H. up to go to work.[36]

41. She indicated that the only time that T.H. talked to her in a bad way was a long time ago and that nothing has happened after that time.[37]

42. She also stated that Grandmother, A.R., now believes her about what has happened with T.H.[38]

43. She also stated that T.H. does not come around her anymore and that she believes A.R. would protect her.[39]

---

[30] Dependency Hearing Transcript, sealed, 8/12/19.
[31] Id.
[32] Id.
[33] Id.
[34] Id.
[35] Id.
[36] Id.
[37] Id.
[38] Id.
[39] Id.

44. During the interview of I.M. she eventually changed her earlier statements that the incident with T.H. did not occur. She did not specifically say what happened but she did affirm to the GAL that she had previously told the GAL about the "nasty" things that T.H. said and did.

45. In light of the credible testimony of I.J.M. who was reported to be with I.M. and T.H. when the incident occurred, and in light of the lack of corroborating evidence from the only other witness, Ms. Green, the court deemed the portion of I.M.'s testimony regarding any alleged improper conversation or conduct of T.H. not to be credible.

## LEGAL ANALYSIS

The Pennsylvania Superior Court has stated the standard of review in dependency proceeding is, as follows:

> The burden of proof in a dependency proceeding is on the petitioner ... who must show [that] the juvenile is without proper parental care, and that such care is not immediately available. A finding of dependency must be supported by clear and convincing evidence that proper parental care and control are not available. The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. Without such evidence, a child cannot be adjudged dependent and must be returned promptly to his or her parent.

**In Interest of J.M.,** 652 A.2d 877, 880 (Pa.Super.1995) (quotations and citations omitted).

Our Courts have described clear and convincing evidence as evidence that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear

conviction, without hesitancy, of the truth of the precise facts in issue." **In the Matter of C.R.S.**, 696 A.2d 840, 843 (Pa. Super. 1997) (citation omitted).

The dual purpose of the Juvenile Act is to preserve the unity of the family and to "provide for the care, protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter." **In re K.C.**, 903 A.2d 12, 14-15 (Pa. Super. 2006) (See **42 Pa. C.S.A. § 6301(b)(1.1)**).

Section 6302(1) of the Juvenile Act defines a "dependent child," as follows:

**"Dependent child."** A child who:

is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

**42 Pa. C.S.A. § 6302 (1).**

The dependency of a child is not determined "as to" a particular person, but rather must be based upon two findings by the trial court: whether the child is currently lacking proper care and control, and whether such care and control is immediately available. **In re R.T.**, 778 A.2d 670, 677 (Pa.Super.2001); **Matter of Read**, 693 A.2d 607, 609 (Pa.Super.1997). "Both of these determinations must be supported by clear and convincing evidence." **In Interest of JOV**, 686 A.2d 421, 423 (Pa. Super, 1996).

In this case, the proof of "dependency" was inadequate. Intake caseworker Donita Green, the only witness other than the two children, had not become involved in the case

until after the report of possible abuse was made. Most of her testimony was based on her observation of a forensic interview of I.M. and her twin brother, I.J.M.

The brief summary of the forensic interview that was provided by the caseworker, Ms. Green, leaves unanswered the question regarding the use of any forensic interview techniques, the manner in which the forensic interviewer phrased questions and whether the forensic interviewer's questions were capable of suggesting responses from the child, I.M., or whether the interviewer used suggestive, leading questions during the interview of I.M. There is no evidence of the child's behavior during the forensic interview. There is no evidence regarding the qualifications or experience of the forensic interviewer. Caseworker, Ms. Green, did not provide the Court with her observations of the forensic interview techniques or the qualifications of the interviewer.

Without testimony from the forensic interviewer concerning the manner in which the interview was conducted, the Court cannot assess whether the statements provided by I.M. at the forensic interview were tainted, either by another party or by prior experiences of sexual abuse. Without testimony from the forensic interviewer, the Court is unable to sufficiently assess the reliability of the information conveyed by the child during the interview and then recounted to the Court by caseworker, Ms. Green. During the in camera court interview, I.M. initially did not confirm that the alleged incident occurred and she did not provide any of the specific details at the hearing that were referenced in Ms. Green's summary of the child's statements from the forensic interview. This further calls into question the reliability of the forensic interview statements of the child that

were summarized to the Court during the testimony of caseworker, Ms. Green. Thus, the Court can afford little to no weight to the forensic interview summary provided by caseworker, Ms. Green.

The alleged incident was not corroborated by one of the children, I.J.M, who was allegedly present when the incident occurred. Moreover, even I.M. first denied that the incident happened and then referenced an interaction with T.H. that was only described in a non-detailed, general way.

Caseworker, Ms. Green testified that Maternal Grandmother was home at the time when the alleged incident occurred, but that Ms. Green did not know whether Maternal Grandmother or Maternal Grandfather were even aware that the alleged perpetrator was in the home. Ms. Green also testified that she had no knowledge of T.H. ever being permitted to be around I.M. after the time she advised the family that T.H. was not permitted to be around I.M.[40] Ms. Green also testified that the child was returned to the home of A.R. upon her release from the hospital and no further instances of abuse were alleged during the eight (8) day time period between her returning home and the filing of the Emergency Protection Petition.

There was no testimony regarding the condition of Maternal Grandparents' home or Mother's home. There was no testimony regarding what actions by the Grandparents substantiated the allegation that Grandparents lack the necessary parental control or supervision. There was no testimony regarding as to how the Grandparents have failed to

[40] Id. at 38.

take a protective stance. To the contrary, I.J.M. and I.M. were clear in their statements that maternal grandmother, in particular, provided for the children and protected the children.

The Court heard the testimony of the child and the child's twin brother which indicated that the alleged perpetrator had not been around the child for approximately two years. Prior to hearing the in camera testimony of the children, the court made an age appropriate inquiry of each child's competence to testify and the Court found I.M. and I.J.M competent to testify. The competency investigation by the court was designed to question the children in such a way to test their "(1) capacity to observe or perceive the occurrence with a substantial degree of accuracy; (2) ability to remember the event which was observed or perceived; (3) ability to understand questions and to communicate intelligent answers about the occurrence, and (4) consciousness of the duty to speak the truth." **Commonwealth v. Anderson**, 381 Pa.Super 1, 8, 552 A.2d 1064, 1068 (1988), **alloc. denied**, 524 Pa. 616, 571 A.2d 379 (1989). After the competency inquiry was completed, the court heard the testimony of each child and then utilized, in part, their testimony in reaching the decision in this case.

This Court considered the testimony I.J.M. and was convinced that he answered the questions truthfully and that he understood the questions and answers put to him. In particular, he addressed those questions having to do with the alleged sexual abuse and the alleged perpetrator's presence at the home of Maternal Grandparents. I.J.M. completely disavowed that anything happened between T.H. and I.M. during the relevant

time frame from which the current allegations arose. He clearly stated that T.H. was not at the Maternal Grandparents' home during the relevant time frame.

The Court also considered the testimony I.M. and was convinced that she understood the difference between telling the truth and telling a lie and that she understood the questions and answers put to her, specifically those questions having to do with the alleged sexual abuse and the alleged perpetrator's presence at the home of Maternal Grandparents. I.M. initially denied that there was a time that T.H. came to I.M.'s home and she continued by later stating that T.H. "doesn't come around me."[41] The Court's finding that the child originally denied that the incident happened is based upon the Court's observation of the demeanor of the child when she made the statement and the Court's observation of the clear manner that the statement was made at the time of the interview. The child, I.M., indicated to the Court that she is happy and well taken care of when in the home of Grandmother, A.R., and Grandfather, R.R. She also indicated that she is provided for when in the home of Mother.

The children both testified that they felt safe in the home of the Grandparents, and I.M. also felt safe in the home of Mother. Testimony also established that both Grandmother and Mother have taken a protective stance in not permitting the alleged perpetrator around the child since the allegations were brought to their attention. There is not any indication to the Court that this stance is likely to change with the determination

_____

[41] Sealed Transcript at page 32

by the Court that the child is not dependent. The child stated that Grandmother and Mother both support her and will make sure that the perpetrator is not around the child.

As noted above, during the interview of I.M., she gave conflicting testimony with regards to whether the incident with T.H. occurred and during what timeframe the incident occurred. She did not specifically say what happened but she did affirm to the GAL that she had previously told the GAL about the "nasty" things that T.H. said and did. However, and in light of the credible testimony of I.J.M. who was reported to be with I.M. and T.H. when the incident occurred, and in light of the lack of corroborating evidence from the only other witness, the court deemed that portion of the testimony of I.M. to not be credible.

A finding of dependency is not the same thing as a determination of the best interests of the child; the question is whether the child is *presently* without proper parental care and, if so, whether that care is immediately available. **In re Pernishek**, 408 A.2d 872, 878 (Pa. Super. 1979). Nothing in this record indicates that I.M., on August 12, 2019, the date of the Dependency hearing, was without proper parental care or that Maternal Grandparents could not immediately provide proper care and/or continue to provide proper care in the future.

In the case, **Matter of Jackson**, 448 A.2d 1087, 1089–90 (Pa. Super. 1982), the Superior Court concluded that proof of "dependency" in that case was inadequate where "[O]nly one witness appeared for the petitioning agency. That witness, [a caseworker], had not become involved in the case until after the report of possible abuse ... [and ...

[H]er testimony was a superficial recitation of conditions existing at the time of her testimony." **Id.** In that case, the Superior Court cited to an "almost a total absence of evidence regarding appellant's abilities and/or shortcomings as a parent" and also an absence of "a professional evaluation of appellant's parenting abilities and the child's prospects if permitted to remain with her natural mother" to support the finding that there was nothing in the record to indicate that the child was without proper parental care at the time of the hearing or that the parent could not provide future care. **Id.**

In the instant case viewing this case under the aforementioned standards, the Court finds that there is not clear and convincing evidence to support a finding of dependency. Even if the allegation of abuse was accepted as true, there was no evidence presented that Maternal Grandparents have not taken proper actions since the time of the allegation to rectify the situation and protect the child. The present record does not clearly and convincingly establish that proper parental care or control was not immediately available. The isolated incident of potential abuse, even if the allegation was found to be credible, does not warrant the conclusion that the child will likely continue suffering such treatment.

**In Interest of Palmer,** 590 A.2d 798, 800 (Pa. Super.1991), is a case that is found to be similar factually to the instant case, the Court pointed out that, at the dependency hearing, "[T]here was no testimony concerning [the parent's] parenting ability" even though the Agency presented 11 witnesses, including three witnesses with the ability provide direct evidence of parenting abilities. **Id.** The **Palmer** Court also pointed to the

lack of evidence that the parent would allow the person who abused other children to have access to the parent's child in support of that Court's ultimate decision to reverse the trial Court's finding of Dependency. **Id.**

It has long been an accepted proposition in Pennsylvania that "it is a very serious matter indeed to allege that a child is a dependent child and thereby invite the intervention of agencies of the state into a parent's care of that child." **Id.** The statutorily required burden of proof thus requires that a Court can find a child dependent only upon proof by clear and convincing evidence. **42 Pa. C.S.A. § 6341(c).** Clear and convincing evidence is "testimony [that] is so clear, direct, weighty, and convincing as to enable the [fact-finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." **In Interest of Palmer, supra.** At 801.

In order to ensure the proper resolution of a dependency petition, a hearing judge is required to "…..conduct a comprehensive inquiry by receiving evidence from both interested and disinterested witnesses …" **In re A.S.,** 936 A.2d 1094, 1096–97 (Pa. Super. 2007) (emphasis added). The evidence that was received in this case, when examined by the Court, does not constitute the type or quantum of evidence that is so clear, direct, weighty, and convincing so as to permit the Court to come to a clear conviction, without hesitancy, of the truth of the facts upon which BCCYS requests that this Court make a finding of dependency.

In this case, the evidence presented by the Agency falls short of the necessarily high standards that are in place before a Court can Order an outside Agency to intervene

into this family's right to care for I.M. The inability to properly protect I.M. and the underlying incident which was presented as the danger from which the child, I.M., required protection were not proved by clear and convincing evidence. Accordingly, because the evidence does not support a finding of dependency, this decision of this Court should not be disturbed.

This Court is aware of the risks facing a child when there are allegations of sexual abuse such as in the instant case. However, based on the evidence in this case, BCCYS has not presented sufficient credible evidence for the Court to conclude on the present record that the child, I.M. ".... is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals." **42 Pa. C.S.A. § 6302(1).**

## CONCLUSION

For the reasons stated above, this Court respectfully submits that the allegations of error in this case are without merit and therefore this Court's holding should be affirmed. The Beaver County Juvenile Court Clerk is hereby directed to file the record of these proceedings with the Superior Court of Pennsylvania, an appropriate order shall follow.

Respectfully Submitted,

_____  J.

COMMON PLEAS
COURT OF
BEAVER COUNTY

2019 OCT 11 P 12: 51

JUVENILE SERVICES
RECEIVED