628 A.2d 439

**In re JEFFREY S., Justin S., Jordon S., Joy S.**

**Appeal of KATHLEEN S.**

Superior Court of Pennsylvania.

Argued April 27, 1993.

Filed July 20, 1993.

80

Frederick Santacroce, Campbell, CA, for appellant.

L. Carter Anderson, Montrose, for Children and Youth Services, participating party.

Before CAVANAUGH, WIEAND and HOFFMAN, JJ.

WIEAND, Judge.

By order dated October 26, 1992, Jeffrey S., Justin S., Jordon S. and Joy S.[1] were adjudicated dependent and placed in the custody of Susquehanna County Services for Children and Youth ("C.Y.S.") with directions.[2] Kathleen S., the children's mother, appealed.

 A dependent child is one who "is without proper parental care or control...." 42 Pa.C.S. § 6302. Whether a child is lacking proper parental care and control encompasses two discrete questions: (1) Is the child at this moment without

1. The children range in age from four (4) to nine (9) years.

2. The court's directions were as follows:
 1. Said Agency shall prepare and implement a program of visitation of the children with their natural mother.
 2. Said Agency shall place the children in an approved foster home until further order of Court.
 3. The said Agency shall take all appropriate steps to obtain appropriate psychological and/or family counseling for the said children.
 4. The children's father, David [S.], shall have no contact with the children until further order of Court.

proper parental care or control? and (2) If so, is such care and control immediately available? *In re J.C.,* 412 Pa.Super. 369, 373, 603 A.2d 627, 628 (1992); *In re Justin S.,* 375 Pa.Super. 88, 99, 543 A.2d 1192, 1197 (1988); *In re Anita H.,* 351 Pa.Super. 342, 344–345, 505 A.2d 1014, 1015 (1986). A finding of dependency must be supported by clear and convincing evidence. *In re S.M.,* 418 Pa.Super. 359, 362, 614 A.2d 312, 313 (1992); *In re Justin S., supra,* 375 Pa.Super. at 99, 543 A.2d at 1197. " 'The standard of "clear and convincing evidence" means "testimony [that] is so clear, direct, weighty, and convincing as to enable the [trier of facts] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." ' " *In re Justin S., supra* at 99–100, 543 A.2d at 1197, quoting *In the Matter of Jackson,* 302 Pa.Super. 369, 374, 448 A.2d 1087, 1089 (1982), quoting *In re Jackson,* 267 Pa.Super. 428, 431, 406 A.2d 1116, 1118 (1979). Without such evidence, a child cannot be adjudged dependent and must be returned promptly to his or her parent. *In re Justin S., supra,* 375 Pa.Super. at 99, 543 A.2d at 1197.

■ In the instant case, there is no evidence that the children are lacking proper parental care or control. There is a total absence of evidence that the children's mother is unable or unwilling to provide such parental care or control. The worst that can be said of her conduct is that when the children began to accuse their father of abusing them sexually, she was confused and hesitant in believing that her husband would do such a thing. After her husband had pleaded guilty to criminal charges, however, she was prepared to accept fully her allegiance to her children and her responsibility for their care and control. There is not one iota of evidence that she cannot or would not provide proper parental care for her children.

In June, 1992, Kathleen S. became aware of allegations that her husband, the father of her children, had abused one or more of her sons. She consulted immediately with the pastor of the church where she and her husband were members and where her husband was a leader in the Sunday School Program. The pastor urged caution until there was more evi-

dence. In July, however, Kathleen became aware that her daughter had also been abused and promptly contacted the authorities. After consulting with representatives of C.Y.S., she filed a petition for protection from abuse, and her husband was duly ordered to leave the home. On August 6, however, she called C.Y.S. to say that she wanted her husband to be allowed to return home. She was told that if he did return, the children could not remain. Kathleen then made arrangements for the children to live with her mother. This came to an end on September 8, when appellant entered a thirty (30) day, non-renewable agreement to place the children with C.Y.S. for temporary placement in foster homes. When Kathleen later expressed a desire to have her children returned, C.Y.S. filed a petition to have the children adjudicated dependent. This petition was heard on October 26, 1992, the same day on which the children's father entered pleas of guilty to charges of sexually abusing some of his children.[3]

After testimony of the foregoing history had been presented at the hearing, a C.Y.S. caseworker was asked for a recommendation and said that the children should remain in foster care. She said:

It is the opinion of the Agency that mother has displayed a great deal of love and affection for the children. However, there is a concern that mother was stating that she did not believe that the youngest child, Joy, had been abused by the father and she was minimizing the abuse of the other three children and she has also fluctuated in her support of the father in having him in the home and having him out of the home, so we are recommending that the children continue to remain in foster care and that the father have no contact with the children until the criminal issues are resolved.

The same witness suggested generally that in abuse cases the children have a tendency to blame the non-offending parent and recommended counselling. There was no evidence, however, that the children in this case were blaming their mother for their father's misconduct. More importantly, there was no reason to believe that the appellant-mother would not cooper-

3. The children's father is now serving a sentence of imprisonment.

ate in obtaining the counselling recommended by C.Y.S. Indeed, she is already receiving counselling, and her history has been one of total cooperation with C.Y.S. She cannot be faulted merely because, when her world was suddenly blown apart, she hesitated in confusion before severing the relationship with her husband. The husband is now serving a term of imprisonment, and the appellant-mother is prepared to resume her parental responsibilities to the children. There is not one iota of evidence, to repeat, that she is incapable, unwilling or unprepared to provide parental care for her children. She is entirely innocent of wrongdoing and, according to the record before this Court, a caring and loving parent.

Under these circumstances, the record does not support the trial court's adjudication of dependency. The absence of evidence is not overcome by the opinion of a caseworker that abused children generally are inclined to blame the innocent parent and, therefore, these children should remain in foster care until future, indefinite arrangements can be made by the agency for counselling with the children.

■ "The fundamental purpose of proceedings under the Juvenile Act is to preserve the unity of the family. The care and protection of children are to be achieved in a family environment whenever possible." *In re Justin S., supra* at 103, 543 A.2d at 1199. See also: 42 Pa.C.S. § 6301(b)(1), (3). Although a finding of abuse is sufficient under most circumstances to support an adjudication of dependency, a court cannot adjudge a child to be dependent where an innocent, caring and loving parent is ready, willing and able to provide the child with proper parental care and control.

The adjudication of dependency is reversed and set aside.[4]

---

4. By our decision we do not necessarily intend to overrule CYS's recommendation that the children undergo counselling. If counselling has not already been done and is still deemed necessary, arrangements for counselling can be made cooperatively by CYS and the children's mother.