**In the Matter of Kaitlyn READ.**

**In the Matter of Jaclyn READ.**

**Appeal of Michael and Kathleen READ.**

Superior Court of Pennsylvania.

Argued Jan. 7, 1997.

Filed March 21, 1997.

Reargument Denied June 2, 1997.

---

Bradley L. Griffie, Carlisle, for appellants.

Rachel L. Mensch, Carlisle, for appellees.

Ruby D. Weeks, Carlisle, for Cumberland County Children and Youth Services, participating party.

Before CAVANAUGH, JOHNSON and EAKIN, JJ.

CAVANAUGH, Judge.

Appellants, Michael and Kathleen Read, are the natural parents of Kaitlyn and Jaclyn Read, twin girls born on May 2, 1995. Kaitlyn and Jaclyn were hospitalized for injuries

from suspected child abuse at the age of five months. At an emergency juvenile hearing held on October 13, 1995 the infants were found to be the victims of child abuse and dependent. Following the hearing, the court was unable to ascertain who was responsible for the abuse because the primary care of the children was divided between both parents and a baby-sitter during the first five months following their birth. Consequently, the children were delivered to the care and custody of the maternal grandmother, who at the time was staying with the parents to care for the children.

The final hearing on the matter was held on December 11, 1995.[1] By order dated December 11, 1995, the court again held that the children were dependent and made a further specific finding that they are abused. However, the court was still unable to ascertain the party responsible for the abuse. Following the hearing, the court deemed it to be in the best interests of the children to return the custody of the children to the parents. The court directed Cumberland County Children and Youth Services to enter into a family service plan with the parents, and to provide for at least monthly medical visits for the children with their pediatrician.

Appellants' raise the following issues on appeal:

1) Did the trial court abuse its discretion in determining that Jaclyn Read was an abused child and dependent child.

2) Did the trial court abuse its discretion in determining that Kaitlyn Read was an abused child and dependent child.

3) Did the trial court abuse its discretion in basing its determination that Kaitlyn and Jaclyn Read were abused and dependent children solely on a medical report without the medical expert being present to testify.

4) Did the trial court abuse its discretion in basing its determination that the children were abused and dependent solely on the testimony of a children services supervisor who had no personal contact with the parties, witnesses or investigative personnel in the case.

1. All parties waived the requirement for a ten

A dependent child is one who "is without proper parental care or control ..." 42 Pa.C.S.A. § 6302; *In Interest of Garthwaite*, 422 Pa.Super. 280, 283, 619 A.2d 356, 358 (1993). "Whether a child is lacking proper care and control encompasses two discrete questions: (1) Is the child at this moment without proper parental care or control? and (2) If so, is such care and control immediately available?" *In re Jeffrey S.*, 427 Pa.Super. 79, 80–81, 628 A.2d 439, 440 (1993); See also *In re J.C.*, 412 Pa.Super. 369, 373, 603 A.2d 627, 628 (1992); *In Interest of Justin S.*, 375 Pa.Super. 88, 99, 543 A.2d 1192, 1197 (1988); *In Interest of Anita H.*, 351 Pa.Super. 342, 344–345, 505 A.2d 1014, 1015 (1986). If a child is adjudicated dependant under the Juvenile Act, he or she cannot be separated from his or her parents absent a showing that the separation is clearly necessary. *In Interest of Feidler*, 392 Pa.Super. 524, 527, 573 A.2d 587, 588 (1990). "[A] decision to remove a child from his or her parents' custody must be reconciled with the 'paramount purpose' of preserving family unity." *In re S.M.*, 418 Pa.Super. 359, 365, 614 A.2d 312, 314–315 (1992).

A finding of dependency must be supported by clear and convincing evidence that proper parental care and control are not available. *In re S.M., supra* at 362, 614 A.2d at 313; *Matter of B.R.*, 408 Pa.Super. 345, 352, 596 A.2d 1120, 1123 (1991); *In Interest of Palmer*, 404 Pa.Super. 314, 318, 590 A.2d 798, 800 (1991). *In Interest of J.R.W.*, 428 Pa.Super. 597, 631 A.2d 1019 (1993). "The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Matter of Sylvester*, 521 Pa. 300, 304, 555 A.2d 1202, 1203–1204 (1989). *In Interest of J.M.*, 438 Pa.Super. 409, 416, 652 A.2d 877, 880 (1995). "Without such evidence the child must be returned promptly to his or her parents." *In Interest of J.M., supra* at 416, 652 A.2d at 880.

The standard by which we review such matters has been described as follows:

day hearing following the juvenile petition.

The standard of review which this court employs in dependency cases is broad. However, the scope of our review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court. We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him. Relying on this unique posture, we will not overrule his findings if they are supported by competent evidence. *In Interest of J.M.*, *supra* at 416, 652 A.2d at 880–881 (quoting *In re M.K.*, 431 Pa.Super. 198, 203–204, 636 A.2d 198, 201 (1994); *In re Frank W.D.*, 315 Pa.Super. 510, 517, 462 A.2d 708, 711 (1983)).

Here, dependency and removal are not truly at issue because the children are currently in the care and custody of their parents subject to conditions. Therefore, the issue we must focus upon is the finding by the court of child abuse. With the above standards in mind, and after a careful review of the record, we reverse the trial court's order as to the finding of child abuse as it was not supported by competent evidence that clearly established that either child was abused. We affirm the finding of dependency.

 Child abuse must be established by clear and convincing evidence that a child was physically abused. *In Interest of J.R.W.*, *supra*, at 603, 631 A.2d at 1024. Once abuse has been established, a finding that the caretakers were the abusers need only be shown by prima facie evidence that the abuse normally would not have occurred except by reason of acts or omissions of the caretakers because the likelihood that the abuse occurred at the hands of someone other than a caretaker is small. *Id.* However, a child should not be found abused and dependent merely because a sibling was found to be abused. *In re Jeffrey S.*, *supra* at 83,

628 A.2d at 441. In general, a finding of abuse has been held sufficient under most circumstances to support an adjudication of dependency. *In Interest of J.M.*, *supra* at 416, 652 A.2d at 881; *In re Jeffrey S.*, *supra* at 83, 628 A.2d at 441.

In determining whether these children were abused the trial court defined child abuse as "serious physical or mental injury which is not explained by the available medical history as being accidental ..."[2] It is important to note that this definition is from a prior codification of 23 Pa.C.S.A. § 6303 in the Child Protective Act. This definition has been amended and now reads:

(i) Any recent act or failure to act by a perpetrator which causes nonaccidental serious physical injury to a child under 18 years of age.

23 Pa.C.S.A. § 6303(b)(1)(i).[3]

 The parties do not cite, nor do we find any cases applying this amended statutory definition. The intent behind the amendments to the Child Protective Act was to strengthen the laws in Pennsylvania to protect children. *See* 1993 Pa. Legislative Journal–House, House Bill 1001, October 5, 1993, pgs. 1844–1875. They have accomplished this by eliminating the words "the available medical history." Therefore, if a party can show a "nonaccidental serious physical injury," a court may find abuse without consulting "medical history."[4] A serious physical injury is defined as an injury that: "1) causes a child severe pain; or 2) significantly impairs a child's physical functioning, either temporarily or permanently." 23 Pa. C.S.A. § 6303(a).

In assessing the injuries, the trial court relied upon the testimony of Dr. Holly Bauer, the children's pediatrician. Dr. Bauer, who testified as an expert in pediatric medicine, relied upon the medical records of the children as recorded by herself and the other physicians in her practice and of Hershey Medical Center to account for a total of four

---

**2.** The trial court's opinion inadvertently read, "the unavailable medical history" the line should read "the available medical history."

**3.** The definition of child abuse in the Child Protective Act has been incorporated into the Juvenile Act's definition of dependent child. 23 Pa.

C.S.A. § 6303; 42 Pa.C.S.A. 6302; *In Interest of J.R.W.*, 428 Pa.Super. 597, 631 A.2d 1019 (1993).

**4.** We find that the recent amendment to this definition does not alter our analysis.

bone fractures. Jaclyn had an ankle fracture and Kaitlyn had a skull fracture, an arm fracture and a fracture to her clavicle. Dr. Bauer testified that the fractures were suspicious in nature because infant bones are cartilaginous and fairly hard to break. She testified that the harm incurred would not have occurred "in the rendering of normal care by an adult caretaker" and that "the whole constellation of serial fractures is certainly something that would cause us to suspect abuse. . . ." The court found that any testimony regarding the possible causes to the fractures was mere speculation but that the fact that the fractures existed, with no known cause, was not speculation.

The trial court based its conclusion that Jaclyn was abused on the fact that she had a fractured right ankle approximately one to two weeks old. The testimony reveals that the fracture was a buckle fracture to just one side of the bone. Dr. Bauer testified that this type of injury occurs if "the baby was kind of stood-up abruptly and kind of slammed down in a standing position." The court stated that it would have been an abuse of discretion to ignore the fact that a five-month old infant suffered from an unexplained fracture. However, Dr. Bauer qualified these statements by concluding that the injury was not your typical abuse type injury and could have been accidental.

Kaitlyn suffered from three fractures the first of which was a skull fracture. This injury was reported immediately to the child's pediatrician by the parents. The father repeatedly explained that he could not be sure what had occurred but, Kaitlyn had a "startled reflex" and slipped from his grasp while at the top of a set of the stairs. In grabbing the child with his hand he testified that he made hard contact with her head. He stated that he could not be certain about whether she struck anything while falling, but stated: "my hand was on the same side as the bannister. There was no bruising on her head. There was no mark on my hand that would have been between her head and the bannister . . ." Later that day he noticed swelling on the side of her head and immediately sought medical treatment. At the time, according to the record, the doctors felt this

was not an abuse injury. Nevertheless, the trial court dismissed this testimony and found that it was not an injury that could have resulted in contact with the father's hand alone.

There was no explanation given by the parents regarding the causes of Kaitlyn's arm and clavicle fractures and Jaclyn's ankle fracture. Once the problems were identified, the parents sought immediate care and consistently followed up that care. Most relevant was Dr. Bauer's testimony which clearly indicated that all of these injuries were not representative of the classic type of abuse injuries and could have been caused in a number of accidental ways. These injuries could have been caused by other children, or adults at any time and under any circumstances. The inconsistencies and the lack of clarity and certainty with which the medical testimony was given can not be ignored in light of the evidentiary burden required to find abuse.

The uncertainty in the testimony was demonstrated by the testimony of the supervisor for Children and Youth Services("CYS"), who testified that CYS had not made a final determination regarding this case and that she was unable to make a recommendation in the case. Furthermore, the caseworker testified that she could not state that these parents lacked any particular ability in their parenting skills. She stated that although she was unable to make a final recommendation in the case, the parents showed nothing but care and concern towards the children and that the parents were cooperative in the investigation.

 A thorough review of the testimony simply does not rise to the level required to declare these children abused. It is an unwarranted conclusion to find abuse simply because the parents did not introduce any explanations for the injuries. The evidence must show by clear and convincing evidence that the children were abused and that the injuries were not accidental. The testimony here fails to support a conclusion that the injuries were not accidental. The only conclusive fact is that these children suffered bone fractures. The medical testimony and the testimony from CYS was in-

consistent as to whether these injuries where in\fact accidental. Innuendo and suspicion alone are not enough to compel a finding of child abuse. *In Interest J.M.*, 438 Pa.Super. at 417, 652 A.2d at 881.

In sum, the testimony was qualified and uncertain and the evidence as a whole is at best inconclusive and inconsistent and was not sufficient for the trial court to have found that these children were abused. The evidence was not "clear, direct, weighty, and convincing" that Kaitlyn or Jaclyn were the victims of abuse. In lieu of our disposition there is no need to address the remaining issues.

Order reversed as to finding of abuse. Order otherwise affirmed.

EAKIN, J. files a dissenting opinion.

EAKIN, Judge, dissenting:

Because I believe the record sufficiently supports the determinations of the trial court, I would affirm the finding of abuse and therefore dissent from that portion of the majority decision which finds otherwise.