J-S06016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.L., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: N.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1868 EDA 2021 |

Appeal from the Order Entered September 1, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0001016-2019


BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:              **FILED MARCH 23, 2022**

N.L. ("Mother") appeals from the order finding K.L. ("Child") was the victim of child abuse. We conclude the court did not abuse its discretion in finding that Child was the victim of child abuse and Mother caused Child bodily injury by recklessly failing to supervise her children. We affirm.

In June 2019, DHS received a Child Protective Services ("CPS") Report regarding potential child abuse of Child. The Department of Human Services ("DHS") found the report to be indicated. In October 2019, Child was adjudicated dependent. The trial court conducted a four-day child abuse hearing.[1]

After the hearing, trial court made the following findings of fact:

---

[1] The court held hearings on February 18, 2020, February 3, 2021, May 12, 2021, and June 22, 2021. It issued its decision at a September 2021 hearing.

On June 12, 2019, DHS received a [CPS] Report alleging that at 7:00 AM that day, Child's Mother noticed that Child had swelling on the left front side of his head toward the front of his head. Later that night, Mother brought the Child to St. Christopher's Hospital for Children ("SCHC") for head imaging. On June 13, 2019, DHS spoke with Dr. Norell Atkinson from the SCHC Child Protection Unit. Dr. Atkinson stated that Child had a left, non-displaced skull fracture overlying hematoma and an extra-axial hemorrhage and was admitted to the Pediatric Intensive Care Unit ("PICU") for further treatment. Dr. Atkinson also stated to DHS that the Child's injuries were the result of a significant blunt force impact to the head and that the injuries either resulted from an undisclosed accident or they were inflicted injuries. Mother provided no information to SCHC as to the cause of Child's injuries.

On June 14, 2019, DHS conducted a home visit. During the home visit, DHS learned from Mother that Child may have been injured on June 8, 2019 when Child fell from his unsecured car seat while the Child's ten-year-old sibling ("Sibling" or "Daughter") attempted to load Child into the family's pickup truck[, which had "monster truck" tires,] at Mother's direction while Mother was on the opposite side of the pickup truck. Mother told DHS that she did not seek immediate medical attention because there was no swelling until June 12, 2019.

Trial Court Op., filed Dec. 10, 2021, at 2-3 (citations to record omitted) ("1925(a) Op."). The court stated that it did not find Mother's testimony credible, noting her "story changed quite a bit." N.T., Sept. 1, 2021, at 5. The court found Child was the victim of child abuse and that Mother caused the injury by reckless behavior. Mother filed a timely notice of appeal.

Mother raises the following issues on appeal:

I. Whether the trial court erred and/or abused its discretion by making a finding of child abuse under the Child Protective Services Law, 23 Pa.C.S. [§]§ 6301-6385 inasmuch as this finding was not supported by the record and testimony proffered.

>    II. Whether the trial court erred and abused its discretion by
>    finding child abuse as to Mother . . . where DHS failed to
>    prove by clear and convincing evidence that the injury to
>    the Child was the result of child abuse rather than accidental
>    injury.

Mother's Br. at 3 (suggested answers and unnecessary capitalization omitted).

Mother's issues are interrelated, and we will address them together.

Mother argues that she had "no reason to believe that any issue would arise when [Daughter] took [Child] back to the car." *Id.* at 11. She argues this was an accident for which she is remorseful "every waking day of her life." *Id.* at 12. Mother argues she learned of the accident when she heard Child crying and "immediately spr[a]ng into action, running to his side, comforting him[,] and checking him for injury." *Id.* She claims the lump did not appear immediately and that she brought Child to the hospital when it appeared. She concludes the facts do not support a finding of child abuse.

Mother also argues the court erred in finding she was reckless. She states she believed Child was strapped into his car seat and, as she was on the other side of the vehicle, she could not know Child was unbuckled. She asserts she did not see the fall, cause the fall, or know that Child was unsafe until she heard him cry. Mother points out that Dr. Atkinson testified that the injury could have been accidental.

Mother further argues that DHS did not prove by clear and convincing evidence that child abuse occurred in this case. She argues she did not intentionally harm Child and "there was no indication that her daughter could not carry her brother in his car seat to the car as she had done in the past

and earlier in the outing." *Id.* at 17. Mother notes that Dr. Atkinson opined that the injury could have been caused by an accident and could present itself days after the fall. Mother argues she was cooperative with hospital staff and, on the day of the accident, did everything she could to ensure Child was okay.

This Court reviews orders in dependency actions for an abuse of discretion. *Interest of T.G.*, 208 A.3d 487, 490 (Pa.Super. 2019). We must "accept the findings of fact and credibility determinations of the trial court if they are supported by the record," but need not "accept the [trial] court's inferences or conclusions of law." *Id.* (quoting *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010)).

"[A] petitioning party must demonstrate the existence of child abuse by . . . clear and convincing evidence." *In Interest of J.M.*, 166 A.3d 408, 422 (Pa.Super. 2017) (quoting *In re L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015)). "Clear and convincing evidence" requires:

> that the witnesses must be found to be credible; that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order; and that their testimony is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. It is not necessary that the evidence be uncontradicted provided it carries a clear conviction to the mind or carries a clear conviction of its truth.

*Id.* at 423 (quoting *In re Novosielski*, 992 A.2d 89, 107 (Pa. 2010)).

The Child Protective Services Act defines "child abuse" to include "intentionally, knowingly or recklessly . . . [c]ausing bodily injury to a child through any recent act or failure to act." 23 Pa.C.S.A. § 6303(b.1)(1). Section

- 4 -

6303(a) defines "bodily injury" as "[i]mpairment of physical condition or substantial pain." *Id.* at § 6303(a). It defines "intentionally," "knowingly," and "recklessly" as "hav[ing] the same meaning as provided in 18 Pa.C.S. § 302 (relating to general requirements of culpability)." *Id.*; *accord In Interest of J.M.*, 166 A.3d at 422-23. Section 302 provides the following definition of "recklessly":

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3).

Here, the trial court concluded Child suffered bodily injury and Mother caused the injury by failing to supervise her children:

> In the instant case, Child was a victim of child abuse. DHS clearly demonstrated that Child's fractured skull satisfied the element of "bodily injury" as defined by the CPSL in that the skull fracture was a definite impairment to the Child's physical condition. *See* CPSL 23 Pa.C.S. § 6303(a). On February 18, 2021, Dr. Atkinson testified that the skull fracture extended from the top of the skull to ear level. Dr. Atkinson testified that the injury could be sustained from a short fall of three to four feet and that swelling from the injury could occur shortly after the fall or days after the fall. Dr. Atkinson testified that the Child sustained the injury at the age of five (5) weeks. Dr. Atkinson testified that . . . the injury was not caused by the Child rolling over or making a sudden movement because the Child lacked the requisite mobility to do so at five (5) weeks. Dr. Atkinson testified that Child's injury was the result of blunt force trauma.

- 5 -

> DHS did not provide clear and convincing evidence that the child abuse was intentional on the part of Mother. No evidence was presented showing a single or particular intentional act by Mother showing that Mother intended to cause Child's skull fracture. DHS, however, provided the required clear and convincing evidence that Mother caused bodily injury to Child by her failure to supervise her Child. Specifically, Mother allowed her ten (10) year old daughter to act without adequate supervision to attempt to snap a heavy car seat into a child car seat lock on the passenger side seat of a Ford Expedition with "monster truck" tires, which resulted in the five week old Child falling onto the parking lot cracking his head. The daughter's testimony shows that the Child fell from the truck when she tried to place the Child into the truck. Mother acted knowingly and testified that she had allowed her ten (10) year of daughter to place Child in the truck before and that she allowed the daughter to do so on that day as well. Obviously, the daughter is not to be blamed in this circumstance. It is the Mother's lack of supervision which is [to] blame. Mother was reckless in her supervision of her daughter on that day and the testimony of the Mother provides evidence so clear and evidence so direct that but for her failure to supervise her daughter that Child would not have fractured his skull. Hence, DHS has met its burden to provide clear and convincing evidence for the finding of child abuse.

1925(a) Op. at 8-9 (citations to the record omitted).

Mother does not contest that Child suffered bodily injury. She argues the court erred in finding the injury was a result of child abuse and that she acted recklessly. The record supports the trial court's credibility findings and factual findings. There was clear and convincing evidence that Mother acted recklessly by failing to either ensure personally that Child was properly buckled into his car seat before being lifted into the vehicle, or supervise her daughter adequately to make sure she had secured the baby and could safely load him into a tall truck. The court did not abuse its discretion in finding that

Mother acted recklessly, and that her reckless conduct caused Child bodily injury.

Mother cites *C.F. v. Pennsylvania Department of Public Welfare*, 804 A.2d 755 (Pa.Cmwlth. 2002), and *In the Matter of Read*, 693 A.2d 607 (Pa.Super. 1997), to support her claim that the evidence did not show that this was not an accident, but rather child abuse. In both of the cases she cites, the courts were applying a prior version of the statute at issue, which defined "child abuse" as "[a]ny recent act or failure to act by a perpetrator which causes *nonaccidental* serious physical injury." *C.F.*, 804 A.2d at 758 (emphasis added); *see also Matter of Read*, 693 A.2d at 610.

In *C.F.*, the appellant filed a request to expunge an indicated report of child abuse. There, the appellant had placed her ten-and-a-half-month-old son on the top level of a bunk bed while she went downstairs to prepare a bottle of milk. Approximately 15 minutes later, she returned and found the child stuck with his head between the edge of the mattress and bed frame and with his legs dangling over the side. She immediately sought assistance and the child was taken to the hospital, where he was pronounced dead. The medical examiner listed the cause of death as accidental. DHS concluded the appellant committed child abuse by leaving the child on the top bunk alone for 15 minutes and filed an indicated report of child abuse. The Commonwealth Court concluded the evidence did not support a finding of child abuse, as the medical examiner had found that the child's death was an accident, and the

appellant could not have predicted the child would die if she left him on the bunk bed to prepare his bottle. *Id.* at 758-59.

In ***Matter of Read***, J.R. and K.R. were hospitalized at five months old from suspected child abuse. In their five months, J.R. had suffered an ankle fracture and K.R. had suffered fractures of her skull, arm, and clavicle. K.R.'s father testified regarding the skull fracture, stating K.R. slipped from his grasp at the top of the steps, and he grabbed her with his hand and made hard contact with her head. At the time, the doctors did not think the skull fracture was abuse. The parents provided no explanation for the remaining fractures. The doctor stated all fractures could have been caused by accidents or caused by other children or adults. This Court noted that Children and Youth Services ("CYS") had not made a final determination as to whether abuse had occurred. We concluded that the testimony did not rise to the level required to find abuse, stating it was "an unwarranted conclusion to find abuse simply because the parents did not introduce any explanations for the injuries." *Id.* at 611. We stated CYS had to show by clear and convincing evidence the injuries were nonaccidental and the testimony did not support that conclusion, as the medical testimony and testimony from CYS was inconsistent as to whether the injuries were accidental. *Id.* at 611-12.

The current version of the statute does not require that the injury be "nonaccidental," as the statute at issue in both ***Matter of Read*** and ***C.F.*** did. Rather, it requires a finding of abuse where a perpetrator recklessly "[c]aus[es] bodily injury to a child through any recent act or failure to act."

23 Pa.C.S.A. § 6303(b.1)(1). Further, here, unlike in **Matter of Read**, Mother provided inconsistent statements about the incident and, after hearing testimony about the incident and the circumstances leading up to it, the court concluded Mother's actions were reckless. Similarly, unlike in **C.F.**, the injury here was a foreseeable result of the conduct at issue.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/23/2022